**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| XBRANCH LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>AMAZON.COM, INC., ET. AL,<br><br>        Defendants. | Case No.  2:15-cv-01897-JRG-RSP<br>LEAD CASE<br><br>JURY TRIAL DEMANDED |
| XBRANCH LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>WAL-MART STORES, INC.<br><br>        Defendant. | Case No.  2:15-cv-01906-JRG-RSP<br>CONSOLIDATED CASE<br><br>JURY TRIAL DEMANDED |

**WAL-MART STORES, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A
CLAIM PURSUANT TO 35 U.S.C. SECTION 101**

**[CORRECTED]**

## **TABLE OF CONTENTS**

**Page**

ISSUES TO BE DECIDED -------------------------------------------------------------------------------- 1

INTRODUCTION ----------------------------------------------------------------------------------------- 1

BACKGROUND ------------------------------------------------------------------------------------------- 2

ANALYSIS -------------------------------------------------------------------------------------------------- 5

    A.    *Alice* Step One: All Claims of the '308 Patent Are Directed to the Abstract Idea of Visualizing and Arranging Information. ---------------------------------------- 6

    B.    *Alice* Step Two: What Little Remains of the Claims is Insignificant Post-Solution Activity and Generic Computer Components. ------------------------------ 9

CONCLUSION ---------------------------------------------------------------------------------------- 12

## TABLE OF AUTHORITIES

*Page(s):*

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*
  134 S. Ct. 347 (2014) ...................................................................................................5, 6, 8, 9, 10

*Bascom Research, LLC v. LinkedIn, Inc.*
  77 F. Supp. 3d 940 (N.D. Cal. 2015) ......................................................................................8, 11

*buySAFE, Inc. v. Google, Inc.*
  765 F.3d 1350 (Fed. Cir. 2014) ....................................................................................................9

*Clear With Computers, LLC v. Altec Indus.*
  No. 14-0079, 2015 WL 993392 (E.D. Tex. Mar. 3, 2015) ...........................................5, 6, 7, 10

*Cogent Med., Inc. v. Elsevier Inc.*
  70 F. Supp. 3d 1058 (N.D. Cal. 2014) .........................................................................................8

*Content Extraction v. Wells Fargo Bank*
  776 F.3d 1342 (Fed. Cir. 2014) ....................................................................................................5

*Diamond v. Diehr*
  450 U.S. 175 (1981) .....................................................................................................................5

*eDekka LLC v. 3Balls.com, Inc.*
  No. 2:15-CV-541 JRG, 2015 WL 5579840 (E.D. Tex. Sept. 21, 2015) ....................................11

*Encyclopaedia Britannica, Inc. v. Dickstein Shapiro LLP*
  No. 10-454 (RCL), 2015 WL 5093798 (D.D.C. Aug. 27, 2015) .............................................8, 9

*Gottschalk v. Benson*
  409 U.S. 63 (U.S. 1972) ...............................................................................................................6

*In re Beauregard*
  53 F.3d 1583 (Fed. Cir. 1995) ....................................................................................................10

*Intellectual Ventures I LLC v. Capital One Bank (USA)*
  792 F.3d 1363, 1368 (Fed. Cir. 2015) ..................................................................................10, 12

*Landmark Tech., LLC v. Assurant, Inc.*
  No. 15-0076, 2015 WL 4388311 (E.D. Tex. July 14, 2015) .....................................................10

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*
  132 S. Ct. 1289 (2012) .............................................................................................................5, 9

\

*OIP Techs., Inc. v. Amazon.com, Inc.*
  788 F.3d 1359 (Fed. Cir. 2015) ..................................................................................5, 12

*Planet Bingo, LLC v. VKGS LLC*
  576 Fed. Appx. 1005 (Fed. Cir. 2014).............................................................................10

*Ultramercial v. Hulu, LLC*
  772 F.3d 709 (Fed. Cir. 2014) ......................................................................................5, 9

*Versata Dev. Group, Inc. v. SAP Am., Inc.*
  793 F.3d 1306 (Fed. Cir. 2015) ....................................................................................6, 8

*Versata Software, Inc. v. NetBrain Techs., Inc.*
  No. 13-676-LPS-CJB, 2015WL 5768938, at *1 (D. Del. Sept. 30, 2015) ........................8, 9, 11

**Federal Statutes**

35 U.S.C. § 101................................................................................................................2, 3, 5, 12

**Federal Rules**

Rule 12(b)(6)...............................................................................................................................5

\

Wal-Mart Stores, Inc. ("Walmart") moves to dismiss this case under Federal Rule of Civil Procedure 12(b)(6) for failure to assert a patentable claim because the patent-in-suit is invalid as a matter of law under 35 U.S.C. § 101.

## ISSUES TO BE DECIDED

Should the complaint be dismissed for failure to claim patentable subject matter under 35 U.S.C. § 101 because the patent is directed to nothing more than the abstract idea of visualizing and arranging information?

## WALMART'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO 35 U.S.C. § 101

## INTRODUCTION[1]

U.S. Patent No. 7,188,308 is a "do it on a computer" patent. According to the inventors, anybody with an Internet connection can access virtually any piece of information, which in many instances leads to information overload. Existing approaches were unsatisfactory. They did not allow a user to use his intuition to explore a collection of items like books because there was simply too much information. To solve this problem, the inventors deployed, as they put it, "[a] rudimentary implementation of a library system" that allows a user to locate books by author or category.

Library card catalogs, which let patrons search for books by author, title, and other categories, had of course done this very thing since the 19th century. But, as the inventors explained to the Patent Office when facing a rejection for claiming unpatentable subject matter, library card catalogs were not an "application program on a computer" that involved a "database" and "user interface window." In 2006, years before the Supreme Court issued *Alice Corp. v. CLS Bank International*, that explanation sufficed, and the patent issued.

---

[1] Walmart notes that the content of this brief is substantially similar to the sections of the Amazon and Netflix briefs relating to invalidity pursuant to 35 U.S.C. Section 101.

But in today's post-*Alice* world, taking what had been done in the brick-and-mortar world and doing it on a computer is not subject to patent protection. Because the '308 patent is directed to an abstract idea that cannot be saved by its invocation of generic computing jargon, Walmart respectfully requests that the Court dismiss this action for failure to state a claim pursuant to 35 U.S.C. § 101.

## BACKGROUND

Thomas Weise and Ruedger Rubbert applied for the '308 patent on April 8, 2003.[2] The patent claims to solve a problem that arises from a large collection of items, using books as the primary example. The patent claims to solve this problem with "an interface and method" that can be carried out by "the common tree view," which was a prior-art user interface "as for instance used in the Windows Explorer."[3] "[A] tree structure shows a number of items, and each item may have an arbitrary number of sub-items. Several interrelated items will typically be grouped under a superordinate item."[4] "FIG. 3 shows a fully expanded tree structure, visualizing nodes and references."[5]



---

[2] *See* Exhibit A to the Declaration of Bijal V. Vakil in Support of Wal-Mart Stores, Inc.'s Motion to Dismiss for Failure to State a Claim Pursuant To 35 U.S.C. Section 101 ("Vakil Decl., Ex. A") at 2.

[3] '308 patent 4:5-15.

[4] *Id.* 2:6-9.

[5] *Id.* 5:8-9.

2

\

During prosecution, the U.S. Patent and Trademark Office rejected certain of the claims in the application under 35 U.S.C. § 101 because "the claimed invention is directed to non-statutory subject matter."[6]  In response, the applicants cancelled the claims and added, for the first time, the following preamble to their new independent claims.  The preamble describes a method implemented on a computer running generic software:

> A method for generating an application user interface window used by an executing application program on a computer permitting a user to explore at least a portion of a collection of data, the collection consisting of at least a plurality of nodes and a plurality of directional references forming interrelations between the nodes, the interface window comprising:[7]

That preamble ultimately became the preamble to independent claims 11 and 18 (with a minor addition), and is similar to the preamble of independent claim 1.[8]  The Patent Office issued no further rejections pursuant to section 101, and ultimately allowed the patent.

The '308 patent contains three independent claims, each of which is a method claim directed to a method of "visualizing and arranging" information in the form of nodes and references in a hierarchy to arrive at the "same node" (or "same . . . record").[9]  Claim 1 of the '308 patent is representative of the other claims for purposes of section 101.

> 1. A method for generating an application user interface window used by an executing application program on a computer permitting a user to explore at least a portion of a database or a plurality of related databases, the database(s) containing at least a plurality of nodes represented by database records and a plurality of

---

[6] Vakil Decl., Ex. A at 215-216.

[7] *Id.* at 204-208.

[8] The preamble of claim 11 contains the following additional, italicized language:

A method for generating an application user interface window used by an executing application program on a computer permitting a user to explore at least a portion of a collection of data, the collection consisting of at least a plurality of nodes and a plurality of directional *incoming and outgoing* references forming interrelations between the nodes, the method comprising the steps of:

The preamble of claim 18 has the same language, and refers to records in lieu of nodes.

[9] *See* Claims 1, 11, 18.

3

\

>directional references represented by database records forming interrelations between the nodes, the interface window comprising:
>
>at least one *display region*
>
>visualizing and arranging in the vicinity of a first node shown in the display region a first set of at least *two nodes having references of a first direction with respect to said first node*;
>
>simultaneously visualizing and arranging in the vicinity of at least one second node of the first set of nodes at least a *third node having references with respect to said second node*;
>
>simultaneously visualizing and arranging in the vicinity of said first node a second separate set of at least *two nodes having references of a direction opposite to said first direction with respect to said first node*; and
>
>simultaneously visualizing and arranging in the vicinity of at least one fourth node of the second set of nodes at least *a fifth separate node having references with respect to said fourth node, the fifth node being the same node as the third node* so that visualization of both the third and fifth separate nodes occurs spaced-apart at two different visual locations on the at least one display region.[10]

As shown by the italicized language, claim 1 (like claims 11 and 18) claims visualizing a collection of discrete pieces of information (*i.e.* "nodes," or for claim 18, "records") and references in a particular arrangement, or, as claim 18 describes it, a "hierarchical structure." Dependent claims 2-4 simply add more nodes to the arrangement, or specify the "direction" of the references. Dependent claims 5 and 6 "permit the user to modify the collection of data by deleting, changing or creating" nodes or references. Dependent claims 7, 8, and 9 require "visualizing and arranging nodes . . . in a tree structure." Claims 12-16 and 19-20 require "data assigned to the nodes" or (similar limitations). Claims 10 and 17 add a "computer-readable medium," with claim 10 also requiring a "Web Browser."

---

[10] '308 patent Claim 1.

\

## ANALYSIS

Section 101 "contains an important implicit exception. Laws of nature, natural phenomena, and abstract ideas are not patentable."[11] The Supreme Court has recently set forth a two-step analysis to determine whether a claim falls outside section 101. "First, [the Court] determine[s] whether the claims at issue are directed to one of those patent-ineligible concepts."[12]

Second, the Court "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."[13] "[S]tep two of this analysis [is] a search for an 'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'"[14] "[T]he prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment' or adding 'insignificant postsolution activity.'"[15]

"Patent eligibility under 35 U.S.C. § 101 is an issue of law."[16] A determination of patent validity under section 101 may be made at the pleading stage on a motion to dismiss.[17] This Court has recognized that where, as here, there are no underlying material factual disputes, a case may be disposed of under section 101 without claim construction.[18]

---

[11] *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012) (quoting *Diamond v. Diehr*, 450 U.S. 175, 185 (1981)) (internal alterations and quotations omitted).

[12] *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 347, 2355 (2014).

[13] *OIP Techs., Inc. v. Amazon.com, Inc.,* 788 F.3d 1359, 1362 (Fed. Cir. 2015).

[14] *Alice Corp.*, 134 S. Ct. at 2355.

[15] *Mayo*, 132 S. Ct. at 1294.

[16] *OIP Techs.*, 788 F.3d at 1362.

[17] *See, e.g., Ultramercial v. Hulu, LLC*, 772 F.3d 709, 713, 717 (Fed. Cir. 2014) (affirming district court's order granting defendants' Rule 12(b)(6) motion finding the asserted claims ineligible under Section 101); *Clear With Computers, LLC v. Altec Indus.*, No. 14-0079, 2015 WL 993392, at *3 (E.D. Tex. Mar. 3, 2015).

[18] *Content Extraction v. Wells Fargo Bank*, 776 F.3d 1342, 1349 (Fed. Cir. 2014) ("[C]laim construction is not an inviolable prerequisite to a validity determination under § 101."); *Clear*

\

### A. *Alice* Step One: All Claims of the '308 Patent Are Directed to the Abstract Idea of Visualizing and Arranging Information.

"The abstract ideas category embodies the longstanding rule that an idea of itself is not patentable."[19] "Courts have examined claims that required the use of a computer and still found that the underlying, patent-ineligible invention could be performed via pen and paper or in a person's mind."[20] That is particularly true where "[t]he steps performed by the claimed computer elements *are functional in nature* and could easily be performed by a human."[21]

The claims of the '308 patent are directed to the abstract idea of arranging and visualizing information. The invention can be carried out by "the common tree view," which, according to the patent, is a typical method of visualizing "hierarchical structures."[22] Claim 1, which is representative of the other claims in the patent, visualizes and arranges a hierarchy of information and can be performed entirely in one's head, or on a piece of paper, as shown in the following figure:



---

*With Computers*, 2015 WL 993392, at *3 ("The Court does not need to accept [movant's] characterization or assertion and can formulate a characterization of the claims without construing the claims.").

[19] *Alice Corp. Pty. Ltd.*, 134 S. Ct. at 2356 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (U.S. 1972)) (internal alterations and quotation marks omitted).

[20] *Versata Dev. Group, Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1335 (Fed. Cir. 2015).

[21] *Clear With Computers, LLC*, 2015WL 993392, at *4 (emphasis added).

[22] '308 patent at 2:5-6, 4:12-15.

\

The claimed hierarchy is no different than the card-catalog systems that libraries employed in the 19th and 20th centuries.[23] A patron can search for "The Old Man and the Sea" (a "first node" as recited in the claims) by searching the Book Author (a "second node") card catalog for Hemingway, leading the user to a set of cards describing books written by Hemingway (a "third node").[24] The patron then flips through the set of cards for books authored by Hemingway until he finds the specific card associated with "The Old Man and the Sea."

Alternatively, the patron could have accessed the specific card associated with "The Old Man and the Sea" by searching the Book Title card catalog. Once the patron has accessed the card relating to "The Old Man and the Sea," he will have access to information relating to the book including at least: Category (Literary Fiction) (a "fourth node") Author (Hemingway) (a "fifth node"), Title ("The Old Man and the Sea"), and location within the library's collection (ISDN number).[25] These can be considered outward facing references from "The Old Man and the Sea" reference card, allowing the patron to identify other books of interest.[26] For example, the patron could then use the author catalog to identify the set of books written by Hemingway to search for other books written by Hemingway that might be of interest.[27]

---

[23] *See id.* 6:62-64; *see also, e.g.*, Claim 18 ("At least one display region visualizing a hierarchical structure").

[24] *See, e.g., id.* 27:32-29: Claim 1 ("visualizing and arranging in the vicinity of a first node shown in the display region a first set of at least two nodes having references of a first direction with respect to said first node[;]simultaneously visualizing and arranging in the vicinity of at least one second node of the first set of nodes at least a third node having references with respect to said second node").

[25] *See, e.g., id.* 27:44-47 ("simultaneously visualizing and arranging in the vicinity of at least one fourth node of the second set of nodes at least a fifth separate node having references with respect to said fourth node.").

[26] *See, e.g., id.* 27:40-44 ("simultaneously visualizing and arranging in the vicinity of said first node a second separate set of at least two nodes having references of a direction opposite to said first direction with respect to said first node.").

[27] *See, e.g., id.* 27:48-51 ("the fifth node being the same node as the third node so that visualization of both the third and fifth separate nodes occurs spaced-apart at two different visual locations on the at least one display region").

\

Since *Alice*, patents on visualizing, arranging, and manipulating information have been routinely invalidated as claiming abstract ideas.[28] "Humans have been collecting and organizing information and storing it in printed form for thousands of years."[29] Indeed, the patent itself recognizes that civilization has been organizing and storing information in libraries "for centuries."[30] To facilitate that organization, books (or other types of information) can be visualized and arranged in a hierarchy according to categories such as title and shelf number. But classifying books by title and shelf number "is little different than the basic concept of organizing a physical library so that an individual can search for information by going to the relevant portion of the library and picking a book."[31] "Clearly, a hierarchy is itself an abstraction—an organizational structure through which data can be represented."[32] The claimed concept of visualizing and arranging information is similarly an abstract idea.

The use of coined terms, such as "nodes" and "references," although giving the claims an air of technicality, are merely a part of the abstract idea. Indeed, the specification explicitly defines both limitations as "information." "The term 'node', as used in the claims, is interpreted to mean a discrete piece of information, distinguishable from other pieces of information."[33] "The term 'reference', as used in the claims, is interpreted to mean a piece of information which is assigned to a node and holds the identification of another node."[34] Therefore, nodes and references

---

[28] *See, e.g.*, *Versata Dev. Group*, 793 F.3d at 1333; *Encyclopaedia Britannica, Inc. v. Dickstein Shapiro LLP*, No. 10-454 (RCL), 2015 WL 5093798, at *6-7 (D.D.C. Aug. 27, 2015); *Bascom Research, LLC v. LinkedIn, Inc.*, 77 F. Supp. 3d 940, 949 (N.D. Cal. 2015); *Versata Software, Inc. v. NetBrain Techs., Inc.*, No. 13-676-LPS-CJB, 2015WL 5768938, at *13 (D. Del. Sept. 30, 2015).

[29] *Encyclopaedia Britannica*, 2015 WL 5093798, at *7.

[30] '308 patent 1:11-12.

[31] *Cogent Med., Inc. v. Elsevier Inc.*, 70 F. Supp. 3d 1058, 1063-1064 (N.D. Cal. 2014).

[32] *Versata Software, Inc.*, 2015 WL 5768938, at *7.

[33] '308 patent 6:10-12.

[34] *Id.* 6:45-48.

\

are purely mental concepts, and add nothing concrete to the abstract idea of visualizing and arranging information.

Plaintiff may argue that the independent claims are limited to one particular type of arrangement in which the child of a node is also the parent of the same node. But a narrow abstraction is no less abstract. "[A] claim involves a natural law or phenomenon or abstract idea, even if the particular natural law or phenomenon or abstract idea at issue is narrow."[35]

### B. *Alice* Step Two: What Little Remains of the Claims is Insignificant Post-Solution Activity and Generic Computer Components.

At step two, the Court asks "[w]hat else is there in the claims before us?"[36] Here, once the abstract idea is removed, there is little left to the independent claims. Independent claims 1, 11, and 18 recite a "display region," but that region is used as part of the abstract visualizing steps. Regardless, even if the limitation requires a computer display, inclusion of such generic computer hardware does not transform an abstract idea into patent-eligible subject matter.[37]

The patent itself teaches that claims recite nothing more than conventional activities. The specification describes the primary embodiment as a "rudimentary implementation of a library system."[38] A node may represent the title of a book, "The Sun Also Rises."[39] "A file card in a physical library, holding the shelf number of a book, could . . . be regarded as a reference."[40]

---

[35] *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1353 (Fed. Cir. 2014).

[36] *Mayo Collaborative Servs.*, 132 S. Ct. at 1297.

[37] *See Ultramercial*, 772 F.3d at 715 (describing "displaying [an] ad" as an "abstract idea"); *see also Encyclopaedia Britannica,* 2015 WL 5093798, at *9 ("[A] 'display screen' [is a] generic computer component[]insufficient to transform an abstract idea into patent-eligible subject matter."); *Versata Software, Inc.*, 2015 WL 5768938, at *9 ("[D]isplaying information on a computer terminal . . . [is] 'purely conventional computer activity' that cannot save the claims from the realm of abstraction.").

[38] '308 patent 7:29-30.

[39] *Id.* 3:39-41, 7:29-30 & Fig. 1.

[40] *Id.* 6:62-64.

9

\

The recited claim limitations are abstract and conventional concepts found in every library in America.

Just as it did during prosecution, the plaintiff may seek to rely on its preamble to save its claims from unpatentability. But invocation of generic computer components in a preamble is no longer sufficient to save a patent post-*Alice*. The patentee overcame the Patent Office's section 101 rejection in 2006 by adding a preamble, eight years before the Supreme Court issued its decision in *Alice*. At that time, Patent Office guidance provided that generic recitation of "computer programs embodied in a tangible medium" was sufficient to save claims from ineligibility under section 101.[41] Every limitation in the preambles of the independent claims is a generic computer or component:

- "computer;"[42]
- "database" and "database records;"[43]
- "executing application program;"[44]
- "[a]pplication user interface window."[45]

Today the law is different. Now, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."[46]

The dependent claims fare no better, as they only add additional abstraction, generic computer components, or insignificant post-solution activity. Dependent claims 2-4 are indistinguishable from the independent claims, simply adding more nodes to the arrangement, or speci-

---

[41] *See In re Beauregard*, 53 F.3d 1583, 1584 (Fed. Cir. 1995).

[42] *Alice Corp. Pty. Ltd.*, 134 S. Ct. at 2358.

[43] See *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1368 (Fed. Cir. 2015); Clear with Computers, LLC, 2015 WL 993392, at *4.

[44] *Intellectual Ventures I LLC*, 792 F.3d at 1371; *Planet Bingo, LLC v. VKGS LLC*, 576 Fed. Appx. 1005, 1008 (Fed. Cir. 2014).

[45] *Intellectual Ventures I LLC*, 792 F.3d at 1370; *Landmark Tech., LLC v. Assurant, Inc.*, No. 15-0076, 2015 WL 4388311, at *5 (E.D. Tex. July 14, 2015).

[46] *Alice Corp. Pty. Ltd.*, 134 S. Ct. at 2358.

\

fying the "direction" of the references.  Similarly, dependent claims 7, 8, and 9 require "visualizing and arranging nodes . . . in a tree structure."  But this narrowing of the abstraction cannot save the claims:  "[S]imply to claim a certain type of hierarchy and a certain method of representing such a structure (with nothing more) is to claim an abstraction."[47]

Dependent claims 5 and 6 "permit the user to modify the collection of data by deleting, changing or creating" nodes or references.  This is akin to the hard copy card catalog system long used by libraries: as books are added or removed from a library's collection, the card catalogs are updated to reflect those changes.  Those elements merely add "routine tasks that could be performed by a human," which is insufficient for patentability.[48]  "Allowing users to generate relationships between document objects and storing those relationships separately from the document objects simply describes the abstract idea of creating, storing and using relationships between objects."[49]

Claims 12-16 and 19-20 require "data assigned to the nodes" (or similar limitations).  The specification explains that the data assigned to the node may take the form of a "document."[50]  "Documents can be text documents, images, video clips or any other kind of electronically storable data.  However, a node could also hold a description of the location of a physical document like a CD or a book."[51]  Assigning a data point to a node is indistinguishable from concept of assigning labels to data, which this Court has held to be abstract.[52]

---

[47] *Versata Software, Inc.,* 2015 WL 5768938, at *9.

[48] *eDekka LLC v. 3Balls.com, Inc.*, No. 2:15-CV-541 JRG, 2015 WL 5579840, at *4 (E.D. Tex. Sept. 21, 2015).

[49] *Bascom Research*, 77 F. Supp. 3d at 949.

[50] '308 patent 3:33.

[51] *Id.* 3:39-42.

[52] *eDekka LLC*, 2015 WL 5579840, at *4.

11

\

Claims 10 and 17 add a "computer-readable medium." Claim 10 also requires a "web-browser." Both are generic computer elements.[53] Whether considered individually or as part of an ordered combination, none of these generic computer limitations are sufficient to provide the "inventive concept" necessary to ensure that the patent in practice amounts to significantly more than the ineligible concept itself.

## CONCLUSION

The '308 patent contains no patentable subject matter, as required by 35 U.S.C. § 101. Thus the Court should dismiss this case.

Dated: February 19, 2016

Respectfully submitted,

By: /s/ Bijal V. Vakil
Bijal V. Vakil
CA State Bar No. 192878
(Admitted to practice in E.D. Texas)
**WHITE & CASE LLP**
3000 El Camino Real
5 Palo Alto Square 9th Floor
Palo Alto, CA 94306
Telephone: (650) 213-0300
Facsimile: (650) 213-8158
Email: bvakil@whitecase.com

J. Thad Heartfield
Texas State Bar No. 09346800
THE HEARTFIELD LAW FIRM
2195 Dowlen Road
Beaumont, Texas 77706
Telephone: (409) 866-3318
Facsimile: (409) 866-5789
thad@heartfieldlawfirm.com

Attorneys for Defendant
Wal-Mart Stores, Inc.

---

[53] *See OIP Techs., Inc.*, 788 F.3d at 1363 ("machine-readable medium"); *Intellectual Ventures I LLC*, 792 F.3d at 1370 ("a generic web server with attendant software, tasked with providing web pages").

12

\

# CERTIFICATE OF COMPLIANCE WITH THE COURT'S
# 35 U.S.C. § 101 MOTION PRACTICE ORDER

_____     The parties **agree** that prior claim construction is not needed to inform the Court's analysis as to patentability.

\_\_X\_\_     The parties **disagree** on whether prior claim construction is not needed to inform the Court's analysis as to patentability.

On February 19, 2016, I Bijal Vakil (lead counsel for Walmart), met and conferred with Richard Weinblatt (lead counsel for XBranch) on whether prior claim construction is needed to inform this Court's analysis as to patentability.  The parties disagreed on whether prior claim construction is necessary to inform this Court's analysis as to patentability, with Walmart's position being that claim construction is not necessary and XBranch's position being that claim construction is necessary.

            /s/    Bijal V. Vakil
            Bijal V. Vakil

# CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on February 19, 2016, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by First Class U.S. Mail on this same date.

            /s/ Bijal V. Vakil
            Bijal V. Vakil

i

1031249